UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN BROWN, as Personal
Representative of the Estate of
MIRANDA HENRY,

               Plaintiff,

                                    Case No. 12-14190

v.

                                      Hon. Patrick J. Duggan

DANA HATCH and STARR
COMMONWEALTH,

               Defendants.

_____/

## **OPINION AND ORDER**

      This case involves the tragic death of an infant child named Miranda Henry

while she was in the custody of a foster parent.  The child's natural father, Marvin

Brown, brought this action on behalf of his deceased daughter against the foster

parent, Defendant Dana Hatch, as well as the child placement agency, Defendant

Starr Commonwealth (collectively, "Defendants"), alleging violations of Henry's

substantive due process rights pursuant to 42 U.S.C. § 1983 as well as violations of

Michigan statutory and common law.  Two motions are presently before the Court:

(1) Defendant Hatch's Motion for Judgment on the Pleadings filed pursuant to

Federal Rule of Civil Procedure 12(c) and (2) Defendant Starr Commonwealth's

Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Both

motions have been fully briefed and the Court heard the arguments of counsel at

the October 29, 2013 motion hearing.  For the reasons stated herein, the Court

dismisses Plaintiff's federal cause of action with prejudice and declines to exercise

supplemental jurisdiction over the remaining state law claims.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

This action is brought by Plaintiff Marvin Brown as the personal

representative of the estate of his natural daughter Miranda Henry.  Henry, who

was born on August 31, 2011, died while in foster care on or about October 8,

2011.  (Compl. ¶¶ 6-7.)

Defendant Dana Hatch, who resides in Taylor, Michigan, is a foster parent

licensed by the State of Michigan.  (*Id.* at ¶ 3.)

---

[1] Because Starr Commonwealth previously filed an Answer to Plaintiff's
Complaint, (ECF No. 7), a motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(6) is untimely.  *See* Fed. R. Civ. P. 12(b) (explaining that motions
filed pursuant to the rule "must be made before pleading if a responsive pleading is
allowed").  Insofar as Starr Commonwealth's Answer constitutes a "pleading" as
defined in Federal Rule of Civil Procedure 7(a)(2), Starr Commonwealth should
have filed a Rule 12(c) motion for judgment on the pleadings.  This technical
defect is not fatal as the same standard of review governs motions filed under both
Rule 12(b)(6) and Rule 12(c).  *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850,
851 (6th Cir. 2001) (citation omitted).  Accordingly, the Court construes Starr
Commonwealth's post-answer motion to dismiss as a motion for judgment on the
pleadings.

2

Defendant Starr Commonwealth is a nonprofit child placing agency licensed by the State of Michigan that locates certified foster homes for children in need of foster care. (*Id.* at ¶ 4.) In carrying out this function, Starr Commonwealth receives funds from the State and is subject to extensive regulation.

**B.     Events Giving Rise to the Instant Action**

On September 9, 2011, when Henry was less than two weeks old, the Wayne County Juvenile Court – Family Division terminated her birth mother's parental rights, made Henry a temporary ward of the court, and ordered that Henry be placed into foster care by the Michigan Department of Human Services ("MDHS"). (*Id.* at ¶ 10.) MDHS in turn placed Henry in the custody of Starr Commonwealth pursuant to a contractual arrangement providing that Starr Commonwealth would locate a suitable foster home for Henry. (*Id.* at ¶ 11.) Based on this contract, Starr Commonwealth assumed an obligation to ensure the children's health and safety. (*Id.* at ¶ 15.) The contract obligated Starr Commonwealth to approve foster parents who satisfied Michigan's requirements for child placement workers, to train its employees and foster parents, and to place foster children in homes that it certified as meeting state standards. (*Id.* at ¶¶ 16-17.)

In September 2011, Starr Commonwealth placed Henry with Defendant Hatch for foster care. (*Id.* at ¶ 12.) According to the Complaint, at the time Henry

was placed with Hatch, "Hatch had been previously suspected of abusing and/or neglecting foster children on at least one prior occasion." [2]  (*Id.* at ¶ 25.) Moreover, Hatch "was untrained, improperly trained and/or inadequately trained on the care of infant children, including but not limited to safe and proper sleeping conditions of infants[.]"  (*Id.* at ¶ 26.)  While Henry resided with Hatch, "her foster care was being monitored and supervised by an unqualified and improperly trained foster care placement worker from Defendant Starr [Commonwealth]."  (*Id.* at ¶ 27 (capital lettering removed).)

 On or about October 8, 2011, approximately one month after Henry was placed in Hatch's care, Hatch fell asleep while lying in bed with one of her sons and Henry.  (*Id.* at ¶ 28.)  At some point during the course of the evening, Hatch rolled on top of Henry causing Henry to suffocate to the point of asphyxiation. (*Id.*)  The forensic pathologist who conducted the autopsy on Henry identified the cause of death as suffocation.  (*Id.* at ¶ 29.)

## C.    Court Proceedings

On September 20, 2012, Plaintiff instituted the present civil action by filing a complaint with this Court.  (Compl., ECF No. 1.)  The Complaint includes five counts:

---

[2] At the motion hearing, Defendant Hatch's counsel indicated that Child Protective Services investigated the claim of abuse or neglect and subsequently dismissed the charge as "unsubstantiated."  At this point in the proceedings, however, the Court must construe the factual allegations in Plaintiff's favor.

    (1)     Count I – Defendant Starr Commonwealth breached its contract with the MDHR;

    (2)     Count II – Defendants breached statutory obligations under the Child Protection Law, Michigan Compiled Laws § 722.622(f), and the Mental Health Code, *id.* § 330.1722(1), (3) (statutory abuse or neglect);

    (3)     Count III – Defendants violated Henry's substantive due process rights under the Fourteenth Amendment to the United States Constitution (the 42 U.S.C. § 1983 count);

    (4)     Count IV – in which Plaintiff asserts claims of "Negligence, Ordinary Negligence, Active Negligence, Gross Negligence, and/or Willful and Wanton Misconduct, against all Defendants;" and

    (5)     Count V – Defendant Hatch was negligent because she failed to comply with various statutory duties as well as a duty of care owed to Henry under a theory of premises liability.

As relief, Plaintiff seeks monetary damages "in excess of Seventy Five Thousand ($75,000.00) dollars, plus interest, costs and attorney fees." (Compl.)

Each Defendant separately challenges the sufficiency of Plaintiff's Complaint. On August 20, 2013, Hatch filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 35.) Starr Commonwealth filed a Rule 12 motion on August 28, 2013. (ECF No. 38.)

## II.    STANDARD OF REVIEW [3]

---

[3] *See* note 1, *supra*.

5

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is reviewed under the standards applicable to motions brought under Rule 12(b)(6). *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted). As with Rule 12(b)(6) motions, a Rule 12(c) motion allows the Court to make an assessment as to whether a plaintiff's pleadings have stated a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555-56, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007), courts must construe the complaint in favor of the plaintiff and determine whether plaintiff's factual allegations present claims plausible on their face. This standard requires a claimant to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims. *Id.* 550 U.S. at 557, 127 S. Ct. at 1965. Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief [.]").

6

In determining whether a plaintiff has set forth a "claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974), courts must accept the factual allegations in the complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.  This presumption, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted).

In assessing the sufficiency of a complaint, courts may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to a defendant's motion to dismiss so long

7

as they are referred to in the complaint and are central to the claims contained therein. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).  However, "[i]f, on a motion under Rule 12(b)(6) or 12 (c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).

In responding to the motions presently before the Court, Plaintiff has attached several exhibits obtained during the initial phase of discovery and has cited to these various documents in responding to Defendants' motions.  The Court has not considered these documents in evaluating the sufficiency of Plaintiff's pleadings.

## III.   ANALYSIS

### A.   Subject Matter Jurisdiction

The sole count in Plaintiff's Complaint providing for federal subject matter jurisdiction is Count III, which seeks to impose liability under 42 U.S.C. § 1983 for Defendants' violation of Henry's substantive due process rights.  Both Defendants argue that dismissal of Plaintiff's Complaint is proper on the basis that Plaintiff's § 1983 count fails and this failure deprives this Court of jurisdiction. Because federal courts are courts of limited jurisdiction and may only exercise those powers authorized by the United States Constitution and federal statutes

8

enacted by Congress, the first and most fundamental question presented in every

civil action initiated in federal court is whether subject matter jurisdiction exists.

*Metro Hydroelectric Co. v. Metro Parks*, 541 F.3d 605, 610 (6th Cir. 2008);

*Valinski v. Detroit Edison*, 197 F. App'x 403, 405 (indicating that federal courts

have an independent obligation to strictly police the boundaries of its subject

matter jurisdiction).  Accordingly, the Court must address the jurisdictional

argument before all others.

In order to prevail on a claim brought pursuant to 42 U.S.C. § 1983,[4] a

plaintiff must establish: "'(1) the deprivation of a right secured by the Constitution

or laws of the United States (2) caused by a person acting under the color of state

law.'" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010) (quoting *Sigley v.*

*City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).[5] Federal courts

consider actions "under color of law" as the equivalent of "state action" under the

---

[4] Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress[.]

[5] Section 1983 "creates no substantive rights; it merely provides remedies
for deprivations of rights established elsewhere." *Gardenhire v. Schubert,* 205
F.3d 303, 310 (6th Cir. 2000).

Fourteenth Amendment.  *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S. Ct. 2764, 2769 (1982); *see also West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988) (explaining that "if a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, 'that conduct [is] also action under the color of state law and will support a suit under § 1983'") (quotation omitted).  The Fourteenth Amendment's Due Process Clause provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.  This Amendment governs only state action, not the actions of private citizens or organizations.  *Rendell-Baker*, 457 U.S. at 837-38, 102 S. Ct. at 2769 (1982) (citing, *inter alia*, *Civil Rights Cases*, 109 U. S. 3, 11, 3 S. Ct. 18, 21 (1883)).

As the above authority suggests, the Court must as a threshold matter determine whether either Defendant is a state actor.  If neither Defendant is a state actor, this Court lacks subject matter jurisdiction.  If, on the other hand, either Defendant is a state actor, then the present action is properly before this Court and the Court must then turn to whether Plaintiff's factual allegations support a finding that a state actor deprived Henry of her federally-protected substantive due process rights.

## 1.   *State Action*

A plaintiff seeking redress under § 1983 must allege a deprivation of a right secured by the federal Constitution or laws of the United States by a person acting under the color of state law.  For purposes of this section, the Court must "weave" its way "through the Supreme Court's labyrinthine state action jurisprudence[,]" *Leshko v. Servis*, 423 F.3d 337, 338 (3d Cir. 2005), to determine whether either Hatch, a foster parent licensed by the State of Michigan,[6] or Starr Commonwealth, a private nonprofit child placement agency, classifies as a state actor.

The primary issue in deciding whether a private party's actions constitute "state action" is whether the party's actions may be "fairly attributable to the State."  *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S. Ct. 2744, 2753 (1982).  The Supreme Court has articulated three tests to determine whether challenged conduct may be deemed fairly attributable to the state such that a private actor may be liable under § 1983.  "These tests are: (1) the public function test, *West*, 487 U.S. at 49-50, 108 S. Ct. at 2255-56 (1988); *Flagg Bros. v. Brooks*, 436 U.S. 149, 157, 98 S. Ct. 1729, 1734 (1978); (2) the state compulsion test, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 170, 90 S. Ct. 1598, 1615 (1970); and (3) the symbiotic relationship or nexus test, *Burton v. Wilmington Parking Auth.*,

---

[6] It appears that as of this date, the Sixth Circuit has not directly addressed the issue of state action as it relates to foster parents.

11

365 U.S. 715, 721-26, 81 S. Ct. 856, 859-62 (1961)." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).

a.    *Is Defendant Hatch a State Actor?*

In this case, Plaintiff alleges that Hatch was acting under color of state law.[7] The gist of Plaintiff's theory is as follows: Starr Commonwealth is a state actor, so Hatch, who acted as an agent of Starr Commonwealth, must also be a state actor. As discussed immediately below, this argument is legally flawed.

Plaintiff cannot establish that Hatch qualifies as a state actor under the public function test. The public function test requires that a private entity exercise powers which are traditionally exclusively reserved to the state as sovereign. *Id.* These functions are in actuality rather limited in number and include activities such as holding elections, *Flagg Bros.*, 436 U.S. at 158, 98 S. Ct. at 1734, or exercising the power of eminent domain, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S. Ct. 449, 454 (1974). While removing a child from her home and placing her with other caregivers are arguably exclusive governmental functions, this Court concludes that the day-to-day provision of foster care is not. Several other courts agree. *Leshko*, 423 F.3d at 343 ("No aspect of providing care to foster children in Pennsylvania has ever been the exclusive province of the government."); *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001)

---

[7] This allegation is not a fact entitled to a presumption of truth on a Rule 12(c) motion.

(affirming district court's finding that foster care has not "traditionally" been "an exclusive State prerogative[]"); *Lintz v. Skipski*, 807 F. Supp. 1299, 1306-07 (W.D. Mich. 1992), *aff'd on other grounds*, 25 F.3d 304 (6th Cir. 1994) ("This Court is unaware of any case which has held that foster parents are State actors."); *id.* at 1306 (explaining that foster parents did not qualify as state actors under the public function test because "[t]he care of foster children is not a power which has been exclusively reserved to the state[]"); *cf. Darby v. California*, 1 F. App'x 688, 691 (9th Cir. 2001) (affirming district court's dismissal of § 1983 claim against foster parent and noting that plaintiffs did not offer sufficient evidence showing that foster mother was a state actor).

Neither is Hatch a state actor under the state compulsion test. This test involves looking at the challenged activity and determining whether the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52, 119 S. Ct. 977, 986 (1999) (quotation and additional citations omitted). In *Adickes*, the Supreme Court held that the existence of a state law commanding racial discrimination made the state responsible for the discriminatory actions of private parties acting in compliance with that law. *Adickes*, 398 U.S. at 170-71, 90 S. Ct. at 1615. Here, the State of Michigan did not exercise the same kind of coercive power over Hatch. Plaintiff's

13

Complaint contains no allegation that the State of Michigan somehow condoned Hatch's decision to fall asleep in the same bed as Henry, let alone that the State somehow significantly encouraged the decision. Rather, as Judge Quist explained in rejecting the plaintiff's state compulsion argument in *Lintz*, "[d]ay-to-day parenting decisions were left to the judgment of the [foster parent]."[8] *Lintz*, 807 F. Supp. at 1306. Accordingly, the State cannot be said to have compelled the allegedly negligent act in this case.

Lastly, Hatch is not a state actor under the symbiotic relationship or nexus test. *Id.* Under this test, the Court asks "whether the actor is so integrally related to the state that it is fair to impute to the state responsibility for the action." *Leshko*, 423 F.3d at 340. In cases involving extensive state regulation of private activity, the Supreme Court has "consistently held that 'the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.'" *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52, 119 S. Ct. at 986 (quotation omitted). Similarly, "[a]ctions of a private party do not become state action merely because the government provides funding." *Lintz*, 807 F. Supp. at 1306 (quoting *Wolotsky*, 960 F.2 at 1336).

_____

[8] Further bolstering the conclusion that day-to-day parenting decisions are left to foster parent discretion is that the State of Michigan extends immunity to foster parents for claims sounding in negligence when "the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." Mich. Comp. Laws § 722.163(1)(b).

14

Although Hatch was licensed by the State of Michigan and received remuneration in exchange for providing foster care services, these facts are insufficient to render a state actor for purposes of § 1983.  Stated differently, the fact that foster care is extensively regulated does not transform Hatch's conduct into conduct fairly attributable to the State of Michigan.

Because Hatch is not a state actor but rather a purely private citizen, she is not amenable to a federal civil rights action under § 1983.  Accordingly, Count III fails to state a claim against Defendant Hatch and the Court dismisses Count III against her.

b.    *Is Starr Commonwealth a State Actor?*

Starr Commonwealth "contests" that it is a state actor but notes that "for purposes of a Motion to Dismiss, the Court must treat this allegation as if it were true."  (Def. Starr Commonwealth's Br., ECF No. 38 at 1 n.1.)  While the Court is not convinced that this jurisdictional fact is one entitled to a presumption of truth, *see West*, 487 U.S. at 46, 108 S. Ct. at 2253 (acting "under color of state law" is a jurisdictional requisite for a § 1983 claim), Starr Commonwealth does not seriously contest its status as a state actor for it has provided very little by way of legal analysis on the issue, (*id.* at 15-16).  Interestingly, Hatch's Reply Brief presents authority suggesting that Starr Commonwealth is not a state actor under the public function test.  (Def. Hatch's Reply, ECF No. 43 at 3-6.)

15

Even assuming that Starr Commonwealth is not a state actor under the public function test because "[t]he care of foster children is not a power which has been exclusively reserved to the state[,]" *Lintz*, 807 F. Supp. at 1306, the Court believes that the Complaint sufficiently alleges a nexus between Starr Commonwealth and the State of Michigan. Henry was removed from her natural parents by order of the Wayne County Juvenile Court and made a temporary ward of the court. (Compl. ¶ 10.) By removing Henry, the State of Michigan assumed an affirmative duty to ensure Henry's safety. The state court ordered that Henry be placed into foster care by MDHS, which in turn placed Henry in the custody of Starr Commonwealth pursuant to a contractual agreement. (*Id.* at ¶¶ 10-11.) Based on this contract, Starr Commonwealth assumed an obligation to ensure Henry's health and safety. (*Id.* at ¶ 15.) The contract obligated Starr Commonwealth to approve foster parents who satisfied Michigan's requirements for child placement workers, to train its employees and foster parents, and to place foster children in homes that it certified as meeting state standards. (*Id.* at ¶¶ 16-17.) Moreover, while Henry resided with Hatch, "her foster care was being monitored and supervised by an unqualified and improperly trained foster care placement worker from Defendant Starr [Commonwealth]." (*Id.* at ¶ 27 (capital lettering removed).) Such allegations, which are entitled to a presumption of truth at this procedural juncture, suffice to state a claim requiring state action. Whether

16

Plaintiff can actually satisfy the burden of proof required to show state action is left for another day.

In sum, the Court finds that Count III of Plaintiff's Complaint, which alleges that Starr Commonwealth should be held liable under § 1983 for its role in depriving Henry of her constitutional rights, contains sufficient allegations regarding state action. As such, this Court possesses subject matter jurisdiction over the present action.

**B.    Deprivation of a Federal Right**

Having found that Plaintiff sufficiently alleges that Starr Commonwealth is a state actor for purposes of § 1983, the Court must now examine whether Plaintiff's allegations plausibly suggest that Starr Commonwealth deprived Henry "of a right secured by the Constitution or laws of the United States." *Miller*, 606 F.3d at 247 (quotation omitted).

Like many of its sister circuits, the Sixth Circuit has recognized the right of a foster child to bring a substantive due process claim where state officials have taken the affirmative action of involuntarily removing the child from his or her home and placing the child into a foster home known as a dangerous environment, in deliberate indifference to the child's right to reasonable safety and security. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 476 (6th Cir. 1990) (holding that "due process extends to the right to be free from the infliction of unnecessary

17

harm to children in state-regulated foster homes"); *Moore v. Lake Cnty. Dep't of Job & Family Servs.*, 364 F. App'x 194, 196 (6th Cir. 2010) ("[A] child has a due process right to be free from harm while in a state foster home[.]") (citations omitted); *Doe v. South Carolina Dep't of Soc. Servs.*, 597 F.3d 163, 175 (4th Cir. 2010) (holding "that when a state involuntarily removes a child from her home, thereby taking the child into its custody and care, the state has taken an affirmative act to restrain the child's liberty, triggering the protections of the Due Process Clause and imposing 'some responsibility for [the child's] safety and general well-being'") (quotation omitted) (alteration in original); *Taylor v. Ledbetter*, 818 F.2d 791, 797 (11th Cir. 1987) (en banc) (holding that a child involuntarily placed in a foster home may state a cause of action under § 1983 for the state official's deliberate indifference to her right to safety); *Doe v. NYC Dep't of Soc. Servs.*, 649 F.2d 134, 145 (2d Cir. 1981) (holding that "[d]efendants may be held liable under § 1983 [for a child's injuries suffered during foster care] if they . . . exhibited deliberate indifference to a known injury, a known risk, or a specific duty").  As the Sixth Circuit explained in *Lintz v. Skipski*, 25 F.3d 304, 305 (6th Cir. 1994), such a claim is based on the deliberate indifference standard developed in cases under the Eighth Amendment.

In order to make out a claim that Starr Commonwealth deprived Henry of her substantive due process right to be free from the infliction of unnecessary harm

18

while in foster care, Plaintiff must allege two components, one objective and the
other subjective.  The objective component requires that "the deprivation alleged"
be "sufficiently serious[.]"  *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct.
1970, 1977 (1994) (quotation omitted).  There does not appear to be a dispute
about the seriousness of the deprivation alleged here.   The subjective component
requires Plaintiff to allege that Starr Commonwealth had "a sufficiently culpable
state of mind."  *Id.* at 834, 114 S. Ct. at 1977.  In cases such as this, where an
individual suffered an injury as a result of being placed in the state's custody, that
state of mind is one of deliberate indifference to health and safety.  *Id.*; *see also*
*Davis v. Brady*, 143 F.3d 1021, 1026 (6th Cir. 1998) ("[A] constitutional claim
arises when the injury occurred as a result of the state's deliberate indifference to
the risk of such injury.").

A showing of deliberate indifference requires that "a plaintiff [] establish
that 'the [actor] knows of and disregards an excessive risk to [] health or safety,'
which is to say 'the [actor] must both be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists, and he must also draw
the inference.'"  *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006)
(quoting *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979).  This language suggests that
while deliberate indifference entails something more than mere negligence or a
lack of ordinary due care, the standard is satisfied by something less than acts or

omissions for the purpose of causing harm or with knowledge that harm will result. *Farmer*, 511 U.S. at 835, 114 S. Ct. at 1978.

Plaintiff's Complaint sets forth three examples in support of a finding of deliberate indifference. First, at the time Henry was placed with Hatch, "Hatch had been previously suspected of abusing and/or neglecting foster children on at least one prior occasion." (Compl. ¶ 25.) Second, when Henry resided with Hatch, "her foster care was being monitored and supervised by an unqualified and improperly trained foster care placement worker from Defendant Starr [Commonwealth]." (*Id.* at ¶ 27 (capital lettering removed).) Third, and lastly, Hatch "was untrained, improperly trained and/or inadequately trained on the care of infant children, including but not limited to safe and proper sleeping conditions of infants[.]" (*Id.* at ¶ 26.)

The first two arguments fail because they do not provide the requisite causal link between the allegedly deliberately indifferent conduct and the harm visited upon Henry. Unconfirmed suspicions of prior abuse are factually untethered from what transpired in the instant case as there is no allegation that Hatch abused Henry. Moreover, it is unclear how the qualifications of the individual monitoring and supervising Henry's placement have anything to do with the accidental death occurring in this case.

20

The gravamen of Plaintiff's deliberate indifference claim is that Starr Commonwealth was deliberately indifferent to Henry's well-being when it placed her with a foster parent who had not received training on safe sleeping techniques. (Pl.'s Resp. to Starr Commonwealth., ECF No. 42 at 12 ("Plaintiff's Complaint very clearly indicates that Starr Commonwealth's liability is predominately based on its failure to properly train foster care parents on safe infant sleeping and its official policies or customs regarding education and training of foster care parents." (citing Compl. ¶¶ 51-56)).)  In fleshing this argument out, Plaintiff contends that Starr Commonwealth had an "affirmative obligation to prevent unnecessary harm to Miranda Henry" by virtue of the Due Process Clause, state statutory law, and its contract with MDHS, but instead of incorporating "safe sleep training as recommended by [the State of Michigan] and as required by the Licensing Rules for Child Placing Agencies[]" so as prevent incidents of the type occurring here, Starr Commonwealth "disregarded [the] obvious risk" posed by co-sleeping and failed to provide Hatch "with appropriate training[.]"  (*Id.* at 11, 14.)

Most cases involving allegations of deliberate indifference by child placement agencies address instances where social workers learned of physical or sexual abuse but failed to act.  *See, e.g.*, *Lintz*, 25 F.3d 304 (sexual abuse); *Meador*, 902 F.2d 474 (sexual abuse); *Lethbridge v. Lula Belle Stewart Ctr.*, No. 06-14335, 2007 U.S. Dist. LEXIS 68281 (E.D. Mich. Sept. 17, 2007) (Zatkoff, J.) (physical

21

abuse).  In these cases, the failure to intervene despite knowledge of abuse (or at least allegations of abuse) resulted in the continuation of the unlawful conduct to the detriment of the child's health and safety therefore depriving the child of his or her substantive due process rights.  The circumstances of this case are different in kind.

This case does not involve allegations of physical or sexual abuse.  Rather, it involves the accidental (though no less tragic) death of an infant child while she slept in the same bed as her foster mother.  Although Plaintiff makes reference to the known dangers of co-sleeping and points to licensing rules and recommendations coming out of a state-appointed panel to show that the danger was obvious, that Starr Commonwealth was allegedly required to train Hatch on proper sleeping arrangements does not mean that the failure to do so amounts to a violation of the United States Constitution.  As Hatch argues, "the mere violation of a state policy does not *ipso facto* give rise to a violation of the [C]onstitution." (Def. Hatch's Reply, ECF No. 43 at 6-7 (citing *Snowden v. Hughes*, 321 U.S. 1, 11, 64 S. Ct. 397, 402 (1944) ("Mere violation of a state statute does not infringe the federal Constitution.")).)  The failure to train on safe sleep techniques,[9]  while *possibly* negligent, does not rise to the level of deliberate indifference.  *Cf. Moore*,

---

[9] The Court notes that it is questionable whether there was such a failure in this case given the evidence contained in the exhibits attached by Plaintiff.  (*See* Def. Starr Commonwealth's Reply, ECF No. 46 at 3 n.2.)

364 F. App'x 194 (declining to replace deliberate indifference standard with a heightened "professional judgment" standard).  While there is a constitutional obligation to ensure that foster parents are minimally qualified such that children are not being placed in the homes of known dangerous persons, it cannot be said that there is a constitutional obligation to train foster parents on each and every risk they may confront while serving as foster parents.

In light of the foregoing, the Court finds that Plaintiff's § 1983 claim (Count III) fails to state a claim against Starr Commonwealth.   Because the Court has already dismissed Count III against Hatch, Count III is dismissed in its entirety.

## C.    State Law Claims

The four remaining counts in Plaintiff's Complaint are creatures of state law. The Court must therefore decide whether to exercise supplemental jurisdiction over those claims.

Title 28 U.S.C. § 1367 permits district courts to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"  *Id.* § 1367(c)(3).  In *Carlsbad Technologies, Inc. v. HIF Bio, Inc.*, the Supreme Court emphasized that once a district court has dismissed all claims over which it possessed independent jurisdiction, the decision regarding whether to exercise supplemental jurisdiction over remaining state-law claims is "purely discretionary."  556 U.S. 635, 639-40,

23

129 S. Ct. 1862, 1866-67 (2009). In deciding whether to retain jurisdiction over state-law claims, a district court should engage in a multi-factor balancing test considering the "values of judicial economy, convenience, fairness, and comity." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010) citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988)). Of particular consequence in this case, when a district court dismisses all claims over which it had original jurisdiction, the balance of considerations is likely to weigh in favor of declining to exercise supplemental jurisdiction. *Gamel*, 625 F.3d at 952 (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.")).

Having dismissed the sole claim over which it had original jurisdiction pursuant to Federal Rule of Civil Procedure 12(c), the Court believes that dismissal of the remaining counts without prejudice is the proper course of action. This belief is rooted in the statutory language providing that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law[.]" 28 U.S.C. § 1367(c)(1). The Court believes that the Michigan courts are better situated to address claims arising under Michigan law, particularly when the claims involve sensitive matters of state law such as

24

those raised in the present action.  The Court therefore declines to exercise supplemental jurisdiction over Counts I-II, IV-V.

## IV.    CONCLUSION AND ORDER

The Court concludes that Plaintiff's Complaint fails to state an actionable claim under § 1983 against either Defendant.

Accordingly,

**IT IS ORDERED** that Defendants' Motions (ECF Nos. 35, 38) are **GRANTED IN PART** and Plaintiff's § 1983 claim (Count III) is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Defendants' Motions (ECF Nos. 35, 38) are **DENIED IN PART** and Counts I-II, IV-V of Plaintiff's Complaint are **DISMISSED WITHOUT PREJUDICE**.


Dated: October 30, 2013

                         s/PATRICK J. DUGGAN
                         UNITED STATES DISTRICT JUDGE


Copies to:

**Michael J. Rothstein, Esq.**
**Paula A. Aylward, Esq.**
**Cameron R. Getto, Esq.**